**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON**

**CIVIL ACTION NO. 20-135-DLB**

**COLIN HAWKINS**                                                                                          **PLAINTIFF**

**v.**                            **MEMORANDUM OPINION AND ORDER**

**J. HELTON**                                                                                              **DEFENDANT**

*** *** *** ***

Plaintiff Colin Hawkins is a federal inmate confined at the United States Penitentiary ("USP")-Beaumont in Beaumont, Texas. Proceeding without an attorney, Plaintiff filed an amended complaint pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), alleging claims against Defendant J. Helton for violations of Plaintiff's Fifth and Eighth Amendment rights. (Doc. # 9).[1] Defendant, by counsel, has filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. (Doc. # 18). Plaintiff has filed a response (Doc. # 26) and Defendant has filed a reply. (Doc. # 27). Thus, this matter has been fully briefed and is ripe for review.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff's amended complaint arises from an incident that occurred while Plaintiff was housed at USP-McCreary in Pine Knot, Kentucky. According to Plaintiff, he was

---

[1] While Plaintiff's original complaint also alleged claims against the United States, the Federal Bureau of Prisons, Wade Thompson, and Gregory Kizziah, (Doc. # 1), these claims were omitted from Plaintiff's first amended complaint. (Doc. # 9). After the initial screening of Plaintiff's first amended complaint required by 28 U.S.C. § 1915(e)(2), 1915A, the Court dismissed the claims against the earlier-named Defendants, but ordered that summons be issued and served on Defendant J. Helton for a response to Plaintiff's constitutional *Bivens* claims against him. (Doc. # 10).

1

involved in a fist fight with another inmate on November 14, 2018. Plaintiff alleges that Defendant (a Correctional Officer at USP-McCreary) responded to the fight, put Plaintiff in a chokehold, allowed the other inmate to punch Plaintiff in the face and head, repeatedly referred to Plaintiff using a racial slur, and continued to choke Plaintiff until Plaintiff lost consciousness. (Doc. # 9). As a result of the incident, Plaintiff claims that he has experienced mental, psychological, and emotional distress "due to the racial slurs and the near death experience, and was also physically injured – resulting in pain and suffering due to the force applied on my fractured spine." (Doc. # 9 at 2-3).

Based on these allegations, Plaintiff brings claims against Defendant for violations of his Fifth and Eighth Amendment rights. (*Id*. at 4). Plaintiff seeks compensatory damages in the amount of $100,000.00 and punitive damages in the amount of $100,000.00. (*Id*. at 8).

In his motion to dismiss or, in the alternative, motion for summary judgment, Defendant argues that Plaintiff's constitutional claims against him are barred by the applicable one-year statute of limitations. (Doc. # 18-1). In response, Plaintiff concedes that he became aware of his injuries on November 14, 2018 (the date of the incident). However, Plaintiff argues that the statute of limitations did not begin to run on his claim until June 21, 2019, the date that he claims that the Bureau of Prisons' ("BOP") response to his Central Officer Administrative Remedy Appeal was delivered to him, and thus his original complaint filed in this case was timely. (Doc. # 26). However, Plaintiff's argument is without merit and his complaint will be dismissed as untimely.

## II.   ANALYSIS

### A.   Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the plaintiff's complaint. *Gardner v. Quicken Loans, Inc.*, 567 F. App'x 362, 364 (6th Cir. 2014). When addressing a motion to dismiss, the Court views the complaint in the light most favorable to the plaintiff and accepts as true all "well-pleaded facts" in the complaint. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). Because Plaintiff is proceeding without the benefit of an attorney, the Court reads his complaint to include all fairly and reasonably inferred claims. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012).

Generally speaking, because a Rule 12(b)(6) motion considers only the allegations in the complaint, such a motion "is an 'inappropriate vehicle' for dismissing a claim based upon a statute of limitations.'" *See Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013) (quoting *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547) (6th Cir. 2012)). However, "when 'the allegations in the complaint affirmatively show that the claim is time-barred . . . dismissing the claim under Rule 12(b)(6) is appropriate.'" *Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 786 (6th Cir. 2016) (quoting *Cataldo*, 676 F.3d at 547) (other citation omitted) (alterations in original). In such circumstances, if the defendant meets its initial burden to show that the statute of limitations has run, "then the burden shifts to the plaintiff to establish an exception to the statute of limitations." *Lutz*, 717 F.3d at 464. *See also Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) ("When it affirmatively appears from the face of the complaint that the time for bringing the claim has passed, the plaintiff cannot 'escape the

statute by saying nothing.'") (quoting *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992)) (other citation omitted).

Moreover, in this case, Defendant moves both to dismiss *and* for summary judgment, attaching and relying upon declarations extrinsic to the pleadings in support of his motion. (Doc. # 18). Thus, the Court may treat Defendant's motion to dismiss the complaint as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F. 3d 1102, 1104 (6th Cir. 2010). *See also Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (where defendant moves both to dismiss and for summary judgment, plaintiff is on notice that summary judgment is being requested, and the court's consideration as such is appropriate where the nonmovant submits documents and affidavits in opposition to summary judgment).

A motion under Rule 56 challenges the viability of another party's claim by asserting that at least one essential element of that claim is not supported by legally-sufficient evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). A party moving for summary judgment must establish that, even viewing the record in the light most favorable to the nonmovant, there is no genuine dispute as to any material fact and that the party is entitled to a judgment as a matter of law. *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014). The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir. 1994).

However, in order to defeat a properly supported motion for summary judgment, the party opposing the motion may not "rest upon mere allegation or denials of his pleading," but must present affirmative evidence supporting his claims. *See Anderson v.*

4

*Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986). If the responding party's allegations are so clearly contradicted by the record that no reasonable jury could adopt them, the court need not accept them when determining whether summary judgment is warranted. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

  **B. Plaintiff's Constitutional *Bivens* Claims are Untimely**

  Plaintiff's amended complaint must be dismissed as untimely. Plaintiff's claims are brought pursuant to *Bivens*, which held that an individual may "recover money damages for any injuries . . . suffered as a result of [federal] agents' violation of" his constitutional rights. *Bivens* 403 U.S. at 397. Because the remedy afforded in a *Bivens* action is entirely judge-made, there is no statutory limitations period. Instead, federal courts apply the most analogous statute of limitations from the state where the events occurred. *Wilson v. Garcia*, 471 U.S. 261, 268-71 (1985). The events of Plaintiff's complaint occurred in Kentucky; therefore, Kentucky's one-year statute of limitations for asserting personal injuries applies. Ky. Rev. Stat. § 413.140(1)(a); *Hornback v. Lexington-Fayette Urban Co. Gov't.*, 543 F. App'x 499, 501 (6th Cir. 2013); *Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003). Thus, Plaintiff was required to bring his constitutional *Bivens* claims within one year from the date on which his claim accrued. Ky. Rev. Stat. § 413.140(1)(a).

  While state law provides which statute of limitations applies, federal law controls when a constitutional *Bivens* claim accrues. *See LRL Props. v. Portage Metro Housing Auth.*, 55 F.3d 1097, 1107 (6th Cir. 1995); *McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). Under federal law, a claim accrues when the plaintiff knows, or has reason to know, of the injury

5

which forms the basis for the action. *Friedman v. Estate of Presser,* 929 F.2d 1151, 1159 (6th Cir. 1991). *See also Estate of Abdullah ex rel. Carswell v. Arena*, 601 F. App'x 389, 393-94 (6th Cir. 2015) ("Once the plaintiff knows he has been hurt and who has inflicted the injury, the claim accrues.") (internal quotation marks omitted) (citing *United States v. Kubrick*, 444 U.S. 111, 122 (1979)); *McCune*, 842 F.2d at 905 (citing *Sevier*, 742 F.2d at 272) ("A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence.").

Plaintiff does not dispute that he became aware of his injuries on November 14, 2018, the date of the incident alleged in his complaint. (Docs. # 9 at 3 and 26 at 1). Where, as here, the operative facts are not in dispute, the Court may determine as a matter of law whether the statute of limitations has expired. *Highland Park Ass'n of Businesses & Enters. v. Abramson*, 91 F.3d 143 (Table) (6th Cir. 1996) (citing *Hall v. Musgrave,* 517 F.2d 1163, 1164 (6th Cir.1975)). *See also Fox v. DeSoto*, 489 F.3d 227, 232 (6th Cir. 2007). Because Plaintiff became aware of his injuries on November 14, 2018, his claims accrued (and the statute of limitations with respect to his claims began running) on that date. Thus, Plaintiff had one year from that date – or until November 14, 2019 – to file his complaint. However, Plaintiff did not file his original complaint in this case until June 18, 2020, well after the expiration of the one-year statute of limitations. Ky. Rev. Stat. § 413.140(1)(a).[2]

---

[2] Under the prison mailbox rule, an incarcerated plaintiff's complaint is deemed filed on the date that it is handed to a prison official for mailing to the court. *Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002) (extending the rule of *Houston v. Lack*, 487 U.S. 266 (1988) to civil matters). Ordinarily, the Court presumes that this occurs on the date the complaint is signed. *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008). Plaintiff signed his original complaint on June 18, 2020. (Doc. # 1 at 10).

In his response, Plaintiff argues that the statute of limitations on his claims did not begin to run until he fully exhausted the available administrative remedies with respect to his claims. (Doc. # 26). It is true that, before he could file suit, Plaintiff was required to exhaust his administrative remedies available under the BOP's Inmate Grievance Program. 42 U.S.C. § 1997e(a).[3] When a claimant is required to exhaust such remedies before bringing suit, the limitations period is tolled while he or she does so, as long as such remedies are pursued diligently and in good faith. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000).

However, contrary to Plaintiff's contention, this does not mean that the limitations period does not begin to run *at all* until the administrative grievance process is complete. Rather, under federal law, "the statute of limitations begins to run once the plaintiff becomes aware of the injury, but is tolled while the prisoner seeks redress through administrative proceedings at the prison." *Proctor v. Applegate*, 661 F. Supp. 2d 743, 761 (E.D. Mich. 2009). Thus, while the statute of limitations on Plaintiff's constitutional claims began to run on November 18, 2018, it was tolled while Plaintiff pursued his administrative remedies. *See Brown*, 209 F.3d at 596 ("[T]he statute of limitations which applied to Brown's civil rights action was tolled for the period *during which* his available state remedies were being exhausted.") (emphasis added) (citations omitted). *See also*

---

[3] The BOP's Inmate Grievance System requires a federal prisoner to first seek informal resolution of any issue with staff. 28 C.F.R. § 542.13. If a matter cannot be resolved informally, the prisoner must file an Administrative Remedy Request Form (BP-9 Form) with the Warden, who has 20 days to respond. *See* 28 C.F.R. §§ 542.14(a) and 542.18. If the prisoner is not satisfied with the Warden's response, he may use a BP-10 Form to appeal to the applicable Regional Director, who has 30 days to respond. *See* 28 C.F.R. §§ 542.15 and 542.18. If the prisoner is not satisfied with the Regional Director's response, he may use a BP-11 Form to appeal to the General Counsel, who has 40 days to respond. *See* 28 C.F.R. §§ 542.15 and 542.18. *See also* BOP Program Statement 1330.18 (Jan. 6, 2014).

7

*Gonzalez v. Hasty*, 651 F.3d 318, 324 (2d Cir. 2011) ("[U]nder the rule we articulate today, the applicable . . . statute of limitations is tolled only during that exhaustion period and not during the period in between the accrual of those claims and when [Plaintiff] began the administrative remedy process.") (citing *Brown,* 209 F.3d at 596); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *25 (E.D. Ky. June 9, 2006), *aff'd and remanded,* 257 F. App'x 897 (6th Cir. 2007) ("[T]he requirement that a prisoner must first exhaust administrative remedies prior to bringing suit does not prevent a claim from accruing; rather, the existence of that requirement acts to equitably toll the running of the statute of limitations while the prisoner invokes and completes that administrative remedy process.").

In this case, Plaintiff claims that he began the administrative grievance process by giving a completed BP-8 Form regarding his claims to his counselor on January 15, 2019. (Doc. # 26 at 2). According to the documentation submitted by Defendant (which is undisputed by Plaintiff), Plaintiff filed a BP-9 Request for Administrative Remedy regarding Defendant's response to the November 14, 2018 inmate fight on January 24, 2019. (Doc. # 18-2, Declaration of Carlos J. Martinez at 2-3, Attachment D). The Warden denied this request on January 28, 2019. On February 13, 2019, the Regional Office received a BP-10 Regional Administrative Remedy Appeal, which was denied on March 13, 2019. (*Id*.). On April 15, 2019, the Central Office received a BP-11 Central Office Administrative Remedy Appeal. (*Id*.). The National Inmate Appeals Administrator responded to this appeal on May 29, 2019, (*id*.), although Plaintiff submits a copy of this response that is stamped "Delivered to Inmate" on June 21, 2019, (Doc. # 26-1 at 4).

8

Construing these facts most generously in Plaintiff's favor, the statute of limitations on his constitutional claims commenced running on November 14, 2018, and ran until he submitted his BP-8 Form on January 15, 2019, or 62 days. If the statute of limitations was tolled while Plaintiff pursued his administrative remedies from January 15, 2019, through June 21, 2019, 303 days remained on the statutory limitations period once the administrative grievance process was complete. Thus, in order to be timely filed, Plaintiff was required to file his lawsuit 303 days from June 21, 2019, or (at the very latest) approximately on or before April 19, 2020. However, he did not file his original complaint in this case until June 18, 2020, (Doc. # 1 at 10), approximately two months after the limitations period expired.

In his response to Defendant's motion, Plaintiff also argues that the Court should equitably toll the statute of limitations for the time period that he was in the Special Housing Unit ("SHU") after the November 14, 2018 incident. (Doc. # 26 at 2). Equitable tolling permits a federal court "to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010). However, application of equitable tolling in suits against the government should permitted only "sparingly, and not when there has only been a garden variety claim of excusable neglect." *Chomic v. United States*, 377 F.3d 607, 615 (6th Cir. 2004). Indeed, "[a]bsent compelling equitable considerations, a court should not extend limitations by even a single day." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000) (citation omitted).

The Sixth Circuit has identified five factors for a court to consider when determining whether to equitably toll the statute of limitations:

> 1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement.

*Truitt v. Cnty. of Wayne*, 148 F. 3d 644, 648 (6th Cir. 1998). "The propriety of equitable tolling must necessarily be determined on a case-by-case basis." *Id*.

Plaintiff does not claim that he did not have actual or constructive notice of the filing requirements, and thus the first, second, and fifth factors are irrelevant. Rather, Plaintiff essentially argues that equitable tolling should apply because, although he was diligent in pursuing his rights, he was unable to obtain a BP-8 Form to begin the administrative remedy grievance process until January 14, 2019. Specifically, in his response, Plaintiff claims that, because he was in the SHU after the November 2018 incident, he was unable to go to the counselor's office to retrieve a BP-8 Form and instead had to wait until the counselor did rounds in the SHU to request a BP-8 Form. (Doc. # 26 at 2-3). According to Plaintiff's response, prior to January 14, 2019, the counselor (Ms. Chitwood) was on leave and no counselor for Building 6 was available to perform rounds in the SHU until January 14. (*Id*).

However, Plaintiff's placement in the SHU and his allegation that he was unable to obtain a BP-8 Form until January 14, 2019 do not justify equitably tolling the statute of limitations from November 2018 through January 14, 2019. As an initial matter, to the extent that Plaintiff claims that his placement in the SHU limited his ability to pursue his claims, a prisoner's "allegedly limited access to the law library and other legal materials, even if more restrictive than general population inmates, does not entitle him

10

to equitable tolling." *Norris v. Eargle*, No. 1: 14 CV 906, 2015 WL 5084779, at *6 (N.D. Ohio Aug. 27, 2015) (collecting cases).  Indeed, "[i]t is well settled that the lack of legal assistance, ignorance of the law or the frustrations of typical prison conditions that make prison-based litigation difficult, such as transfers, lack of access to copies and legal materials, do not constitute exceptional circumstances justifying equitable tolling." *Portman v. Wilson*, No. 10-CV-169-KSF, 2010 WL 4962922, at *2 (E.D. Ky. Dec. 1, 2010) (collecting cases).

Moreover, Defendant has submitted documentation showing that, contrary to Plaintiff's claim that he was unable to obtain a BP-8 Form because Counselor Chitwood was on leave from November 14, 2018 (the date Plaintiff was placed in the SHU) through January 14, 2019, Chitwood did, in fact, work on November 15, November 19-21, and November 27-28, 2018, prior to going on extended leave.  (Doc. # 27-1, Martinez Decl. at ¶ 4, Attachment B).[4]  In addition, Defendant submits documentation showing that, while Counselor Chitwood was on extended leave, two different temporary Counselors were appointed to fill in for her, specifically Mr. Foster from December 12, 2018 through January 10, 2019, and Mr. Shoopman from January 14-24, 2019.  (Doc. # 27-1, Martinez Decl. at ¶ 6, Attachment D, Memorandum).  Thus, during this time, Plaintiff could have requested a BP-8 Form from either of these counselors and/or from any other person in his Unit Team.  Defendant further submits the BOP SHU logs for the relevant time period

---

[4] Defendant also submits a BP-8 Log, which it claims shows that Chitwood gave Plaintiff a BP-8 Form on November 20, 2018.  However, while the Declaration submitted by Defendant states that "BOP records show that Counselor Chitwood gave the Plaintiff a BP-8 form on November 20, 2018," (Doc. # 27-1, Martinez Decl. at ¶ 5), all of the names on the BP-8 Log submitted by Defendant are redacted.  (Doc. # 27-1 at 12, Martinez Decl. at Attachment C, BP-8 Log).  Thus, while the BP-8 Log may support the conclusion that Chitwood gave *someone* a BP-8 Form on November 20, 2018, the copy submitted by Defendant does not indicate whether that someone was, in fact, Plaintiff.

11

demonstrating that Unit Team staff regularly conducted SHU rounds throughout this time period, during which Plaintiff could have requested a BP-8 Form.  (Doc. # 27-1, Martinez Decl. at ¶ 6, Attachment E, SHU Sign-in Logs from 11/11/2018 through 02/02/2019).

In response to Defendant's submission of evidence demonstrating that Plaintiff could have requested a BP-8 Form prior to January 14, 2019, Plaintiff has filed an "Opposition to Defendant's Response," which the Court will construe as a sur-reply filed without leave of Court.  (Doc. # 28).[5]  In his construed sur-reply, Plaintiff does not offer any affirmative evidence to support his claim that he had no opportunity to request a BP-8 Form until January 14, 2019.  Rather, Plaintiff argues that Unit Manager Clark's Memorandum stating that Plaintiff could have requested a BP-8 Form from either himself or either of the two temporary counselors assigned to Chitwood's caseload in her absence is a "false assertion" because the Unit Manager would not have provided an inmate with an administrative remedy form but would instead instruct the inmate to request the form from a counselor.  (Doc. # 28 at 2).  Plaintiff further claims that one of the temporary counselors (Mr. Foster) had a "conflict of interest" in serving as Plaintiff's counselor because his wife was assaulted during the fight on November 14, 2018.  With respect to Defendant's claim that Counselor Chitwood gave Plaintiff a BP-8 Form on November 20, 2018, Plaintiff denies that this is true and points out that this is not evident from the copy of the BP-8 log submitted by Defendant, in light of the extensive redactions on the exhibit

---

[5] The Court's Local Rules do not contemplate or permit the filing of a sur-reply, LR 7.1(c), (g), and hence such filings are not permitted absent leave of the Court.  Such leave is only granted to address arguments or evidence raised for the first time in a reply.  *Key v. Shelby Cnty.*, 551 F. App'x 262, 265 (6th Cir. 2014) (citing *Seay v. Tennessee Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003)).  While Plaintiff's sur-reply is procedurally improper, the Court will construe Plaintiff's "Opposition to Defendant's Response" (Doc. # 28) as a motion seeking leave to file a sur-reply, which will be granted.

submitted with Defendant's reply.  Finally, Plaintiff claims that "[i]n the SHU, an inmate can request an Administrative Remedy form until he is blue in the face, that does not mean that staff will necessarily provide the inmate with said forms."  (Doc. # 28 at 4-5).

However, the party opposing a summary judgment motion may not "rest upon mere allegation or denials of his pleading," but must present affirmative evidence supporting his claims.  See Anderson, 477 U.S. at 256-57.  "[C]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment."  Jones v. City of Franklin, 677 F. App'x 279, 282 (6th Cir. 2017) (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)).  See also Banks v. Rockwell Int'l N. Am. Aircraft Operations, 855 F.2d 324, 325 n. 1 (6th Cir. 1988) ("[A] motion for summary judgment may not be defeated by factual assertions in the brief of the party opposing it, since documents of this nature are self-serving and are not probative evidence of the existence or nonexistence of any factual issues."); Perry v. Agric. Dep't, No. 6: 14-168-DCR, 2016 WL 817127, at *10 (E.D. Ky. Feb. 29, 2016) ("[C]onclusory allegations are not evidence and are not adequate to oppose a motion for summary judgment.").

For these reasons, Plaintiff's conclusory allegations and unsubstantiated assertions claiming that he was unable to obtain a BP-8 Form until January 2019 are insufficient to defeat Defendant's well-supported motion for summary judgment on the timeliness of Plaintiff's claims.  See Belser v. James, No. 16-2578, 2017 WL 5479595, at *2 (6th Cir. June 6, 2017) (generalized statements are insufficient to create a genuine dispute of material fact as to whether the administrative process is available).  Moreover, even if the Court found that Plaintiff was diligent in pursuing his administrative remedies

based on his alleged requests for a BP-8 Form, it does not follow that he was diligent in pursuing his claims in this lawsuit. Indeed, even accepting Plaintiff's theory that the statute of limitations was tolled until he received the response to his BP-11 Central Office Administrative Appeal on June 21, 2019, (Doc. # 26-1 at 4), Plaintiff still waited nearly a year to sign his complaint on June 18, 2020. In these circumstances, the Court finds that Plaintiff's conduct is inconsistent with the diligent pursuit of his rights.

With respect to the fourth factor – absence of prejudice to Defendant – even if the Court found this factor to be neutral, "[t]he absence of prejudice . . . cannot serve as an independent basis for equitably tolling a limitations period, especially where, as here, the plaintiffs fail to demonstrate that any other factor supports tolling." *Zappone v. United States*, 870 F.3d 551, 558 (6th Cir. 2017). *See also Jurado v. Burt*, 337 F.3d 638, 644 (6th Cir. 2003) ("Absence of prejudice is a factor to be considered only after a factor that might justify tolling is identified.").

Thus, after evaluating the applicable factors, the Court concludes that the application of equitable tolling is unwarranted in this case. Because Plaintiff filed his lawsuit well after the statute of limitations with respect to his Eighth Amendment claims expired, his Eighth Amendment claims are barred by the applicable statute of limitations and must be dismissed. *Dellis v. Corr. Corp. of Am.,* 257 F.3d 508, 511 (6th Cir. 2001). Accordingly, Defendant's motion will be **granted** and Plaintiff's complaint will be dismissed.

### III.     CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** as follows:

(1) Plaintiff's "Opposition to Defendant's Response" (Doc. # 28) is construed as a motion for leave to file a sur-reply and is **GRANTED**;

(2) Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. # 18) is **GRANTED**;

(3) Plaintiff's Amended Complaint (Doc. # 9) is **DISMISSED WITH PREJUDICE**;

(4) Any pending request for relief is **DENIED AS MOOT**; and

(5) This matter is **STRICKEN** from the Court's active docket.

A Judgment in favor of Defendant will be entered contemporaneously herewith.

This 7th day of September, 2021.



Signed By:
*David L. Bunning* DB
United States District Judge

J:\DATA\ORDERS\PSO Orders\6-20-135 MOO Granting SJ.docx